UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
Grand Jury N-18-2-38

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM NO. 3:18cr136 (JAM) |
| | : | |
| v. | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1347 (Health Care Fraud) |
| | : | 18 U.S.C. § 1349 (Conspiracy to |
| KWASI GYAMBIBI and | : | Commit Health Care Fraud) |
| KAKRA GYAMBIBI | : | 18 U.S.C. § 2 (Aiding and Abetting) |

INDICTMENT

The Grand Jury charges:

COUNTS ONE THROUGH SIXTEEN
(Health Care Fraud)

At all times relevant to this Indictment:

The Defendants

1. Defendant KWASI GYAMBIBI was a resident of Connecticut. He was an employee of State of Connecticut, and worked at the University of Connecticut in Stamford.

2. Defendant KAKRA GYAMBIBI was a resident of Connecticut. She was a medical doctor licensed to practice in the State of Connecticut. KAKRA GYAMBIBI practiced medicine as a hospitalist in hospitals in Connecticut, including Stamford Hospital.

3. Defendants KWASI GYAMBIBI and KAKRA GYAMBIBI were married to each other.

## The Victims

4.      The State of Connecticut Pharmacy Benefit Plan ("the Pharmacy Benefit Plan") provided health care benefits for state employees, eligible retirees, and their families. The Pharmacy Benefit Plan provided benefits for purchases of prescription drugs, maintenance prescription drugs, and certain preventive medications.

5.      The State of Connecticut engaged CVS Caremark to act as administrator for the Pharmacy Benefit Plan. As the administrator, CVS Caremark performed initial claims processing, prior authorization and medical necessity reviews, and other services related to adjudication of claims submitted to the Pharmacy Benefit Plan.

6.      TRICARE provided civilian health care benefits, items, and services, including prescription drugs, for members of the United States armed forces, military retirees, and their dependents.

7.      Both the Pharmacy Benefit Plan and TRICARE were "health care benefit programs" as defined by Title 18, United States Code, Section 24(b).

8.      The Pharmacy Benefit Plan, TRICARE, and other health care benefit programs were victims of the defendants' scheme to defraud, as described below (collectively, the "Victim Programs").

## Advantage Pharmacy

9.      Advantage Pharmacy ("Advantage") was a compound or compounding pharmacy located in Hattiesburg, Mississippi. As a compounding pharmacy, Advantage would ostensibly create compound prescription drugs specifically tailored for individual patients who had a medical need for a compound drug, by mixing together individual ingredients in the exact strength and dosage prescribed by the health care provider to meet the unique needs of a patient.

10. The compound prescription drugs Advantage prepared and dispensed typically consisted of tubes of cream medications, to be applied topically. Advantage also prepared and dispensed capsules of what Advantage termed "vitamins."

11. Because the compound prescription drugs were ostensibly individually prepared for each patient who received a prescription, the drugs were expensive. One tube of a compound drug cream prepared and dispensed by Advantage typically cost health care benefit programs thousands of dollars, and some individual tubes of cream cost over $10,000 for a one-month supply.

12. Advantage typically received prescriptions directly from health care providers or patients. When the prescriptions were filled, Advantage would dispense the prescribed drugs by sending or causing them to be sent directly to the patient identified on the prescription.

13. When the prescriptions were filled and in order to receive payment, Advantage would submit and cause to be submitted claims for the prescriptions to health care benefit programs or related parties, including CVS Caremark as administrator for the Pharmacy Benefit Plan, TRICARE, and other health care benefit programs.

14. Advantage employed sales representatives to market their prescription drugs. Advantage paid its sales representatives commissions based on the gross amount of sales of prescription drugs generated by the representative. The sales representatives could have a health care provider "tagged" to them, meaning that the sales representative was credited for the prescriptions written by the provider tagged to them, and received a sales commission based on a percentage of the dollar amount that Advantage was paid for prescriptions written by the tagged provider. The sales representative's commission varied from approximately fifteen percent to

approximately twenty-five percent of the gross dollar amount Advantage was paid by health care benefit programs for the prescriptions.

## The Scheme

15. Beginning in or about February 2014 and continuing through in or about November 2015, in the District of Connecticut and elsewhere, the defendants, KWASI GYAMBIBI and KAKRA GYAMBIBI, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud the Victim Programs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of the Victim Programs, in connection with the delivery of and payment for health care benefits, items, and services.

## The Object of the Scheme

16. The object of the scheme was for KWASI GYAMBIBI and KAKRA GYAMBIBI to enrich themselves and others by obtaining money from the Victim Programs to which they were not entitled. To do this, KWASI GYAMBIBI and KAKRA GYAMBIBI submitted and caused to be submitted to the Victim Programs materially false claims for compound prescription drugs based on prescriptions purportedly signed and issued by KAKRA GYAMBIBI when, as KWASI GYAMBIBI and KAKRA GYAMBIBI well knew, KAKRA GYAMBIBI had not treated or examined the patients, and had not determined that the prescription drugs were medically necessary, and the prescriptions were not made or issued in accordance with the generally accepted standards of medical practice.

The Manner and Means of the Scheme

17. Beginning in or about February 2014, KWASI GYAMBIBI approached individuals, including fellow state employees, and solicited them to try compound prescription drugs prepared and sold by Advantage and other compounding pharmacies affiliated with Advantage, including Sunflower Pharmacy, Elite Rx Pharmacy, and AMI. The drugs included topical creams purportedly designed to treat and ameliorate scars and other skin conditions or as topical treatment for pain, and capsules of what Advantage called vitamins.

18. KWASI GYAMBIBI acted as and eventually became a sales representative for Advantage. As a sales representative, KWASI GYAMBIBI received preprinted Advantage prescription forms.

19. Using the preprinted Advantage prescription forms, and with KAKRA GYAMBIBI's knowledge, KWASI GYAMBIBI sent prescriptions for compound drugs to Advantage, usually by fax. Most of these prescriptions were purportedly signed and issued by KAKRA GYAMBIBI, and most contained an order for one or more automatic refills. In truth, neither KAKRA GYAMBIBI nor any other medical provider ever examined these patients to determine the appropriateness of the prescription.

20. As KWASI GYAMBIBI and KAKRA GYAMBIBI knew, Advantage or its affiliated pharmacies filled those prescriptions and sent the compound drugs directly to the patients.

21. As KWASI GYAMBIBI and KAKRA GYAMBIBI knew, Advantage then caused claims to be submitted to the corresponding Victim Program to pay for the compound drugs.

22. As KWASI GYAMBIBI and KAKRA GYAMBIBI knew, each prescription and the resulting claim to the Victim Programs was false and misleading, and omitted material facts, in that neither KAKRA GYAMIBI nor any other medical provider had:

   a. examined the patient for purposes of the prescription;

   b. determined that the prescription drugs were medically necessary;

   c. exercised prudent clinical judgment and determined that the drug should be provided to the patient for the purpose of treating an illness, disease, or its symptoms;

   d. made or issued the prescription in accordance with generally accepted standards of medical practice; or

   e. determined that the prescription was clinically appropriate, in terms of type, frequency, extent, site and duration, or that the prescribed drug was considered effective for the patient's illness, injury, or disease.

23. By way of example, on or about May 12, 2014, e-mail inquiry was made of KAKRA GYAMBIBI regarding a prescription purportedly written by her for a patient with initials "M.R." KAKRA GYAMBIBI, who had not seen or examined M.R., forwarded the inquiry to KWASI GYAMBIBI and asked him "who is she"; "what's the cream for specifically? U kno her insurance? Demographics such as age, date of birth, address"; and "which cream did u prescribe?"

24. Based on these false and misleading claims, the Victim Programs paid Advantage for the compound prescription drugs. Advantage, in turn, paid commissions to sales representatives who were "tagged" to the prescribing physician. KAKRA GYAMBIBI was "tagged" to KWASI GYAMBIBI's cousin, who was a sales representative for Advantage. As a result, KWASI GYAMBIBI's cousin received a sales commission for each Advantage prescription

purportedly written or issued by KAKRA GYAMBIBI that was filled by Advantage and paid for by a Victim Program.

25. KAKRA GYAMBIBI did not create or maintain any records documenting care or treatment to any patient for whom KAKRA GYAMBIBI purportedly prescribed compound prescription drugs from Advantage Pharmacy or its affiliated compound pharmacies, other than the prescription itself. She did not create patient progress notes, documentation of initial or follow-up examinations, plans of care, or other medical record for any of these patients.

26. In addition to inducing the Victim Programs to pay fraudulent claims for others' compound prescription drugs, KWASI GYAMBIBI and KAKRA GYAMBIBI also induced the Pharmacy Benefit Plan to pay for their own compound prescription drugs. KWASI GYAMBIBI received prescriptions and prescription drugs from Advantage for himself as a patient based on prescriptions purportedly signed and issued by KAKRA GYAMBIBI. The Pharmacy Benefit Plan paid Advantage Pharmacy over $225,000 for these prescriptions. KAKRA GYAMBIBI received over $59,000 of prescription drugs from Advantage for prescriptions written to KAKRA GYAMBIBI as a patient, all of which was paid for by the Pharmacy Benefit Plan.

Executions of the Scheme

27. On or about the dates below, in the District of Connecticut and elsewhere, for the purpose of executing the scheme to defraud, KWASI GYAMBIBI and KAKRA GYAMBIBI submitted and caused to be submitted to a Victim Program false claims for prescription drugs, when as KWASI GYAMBIBI and KAKRA GYAMBIBI well and truly knew, no valid prescription for the drugs had been issued:

| Count | Patient Initials | Rx # | Fill Date | Cost to Victim Program | Prescriber | Drug ID/ Label Name | Victim Program |
|---|---|---|---|---|---|---|---|
| 1 | L.B. | 0130995 | 8/1/14 | $11,231.56 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |
| 2 | L.B. | 013996 | 8/1/14 | $5,792.52 | Kakra Gyambibi | 51927237500 Tobramycin | State of CT Pharmacy Benefit Plan |
| 3 | L.B. | 0130997 | 8/1/14 | $4,145.06 | Kakra Gyambibi | 51927436700 Resveratrol | State of CT Pharmacy Benefit Plan |
| 4 | L.B. | 0130998 | 8/1/14 | $1,702.43 | Kakra Gyambibi | 51927218500 Hydroxocobalamin | State of CT Pharmacy Benefit Plan |
| 5 | D.G. | 0127196 | 6/18/14 | $11,247.70 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |
| 6 | D.G. | 0127916 (refill) | 7/17/14 | $11,261.56 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |
| 7 | K.G. | 0122504 | 4/25/14 | $11,247.70 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |
| 8 | N.V. | 0126205 | 6/6/14 | $11,247.70 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |
| 9 | N.V. | 0126205 (refill) | 7/7/14 | $11,261.56 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |
| 10 | S.W. | 0122101 | 4/22/14 | $11,217.70 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |
| 11 | P.W. | 0120578 | 4/4/14 | $11,247.70 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |
| 12 | P.W. | 0137568 | 10/7/14 | $2,587.64 | Kakra Gyambibi | 51927421300 Gabapentin | State of CT Pharmacy Benefit Plan |
| 13 | M.R. | 0101000 | 10/31/14 | $11,382.70 | Kakra Gyambibi | 51927433000 Fluticasone | State of CT Pharmacy Benefit Plan |

| Count | Patient Initials | Rx # | Fill Date | Cost to Victim Program | Prescriber | Drug ID/ Label Name | Victim Program |
|---|---|---|---|---|---|---|---|
| 14 | M.R. | 0101001 | 10/31/14 | $4,179.31 | Kakra Gyambibi | 51927436700 Resveratrol | State of CT Pharmacy Benefit Plan |
| 15 | M.R. | 0101002 | 10/31/14 | $1,732.43 | Kakra Gyambibi | 51927218500 Hydroxocobalamin | State of CT Pharmacy Benefit Plan |
| 16 | L.P. | 152693 | 3/4/2015 | $13,966.88 | Kara Gyambibi | Fluticasone 51927433000 | TRICARE |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT SEVENTEEN
(Conspiracy To Commit Health Care Fraud)

28. The allegations contained in paragraphs 1 through 27 are hereby realleged and incorporated by reference as though fully stated herein.

29. Beginning in or about February 2014 and continuing through in or about November 2015, in the District of Connecticut and elsewhere, the defendants, KWASI GYAMBIBI and KAKRA GYAMBIBI, knowingly and willfully combined, conspired, confederated, and agreed together with each other and others known and unknown to the Grand Jury, to commit health care fraud as described in this Indictment, in violation of Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud the Victim Programs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of the Victim Programs, in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Section 1349.

A TRUE BILL.

/s/
FOREPERSON

UNITED STATES OF AMERICA

JOHN H. DURHAM
UNITED STATES ATTORNEY

DAVID J. SHELDON
ASSISTANT UNITED STATES ATTORNEY

10